[No. 18462.  Department Two.  October 8, 1924.]

C. C. CHAMBERS *et al., doing business as Curtis R. Hay*
*Lumber Company, Respondents,* v. KENT LUMBER
& TIMBER COMPANY, *Appellant.*[1]

BROKERS (13)—COMPENSATION—PERFORMANCE OF CONTRACT—EVI-
DENCE—SUFFICIENCY.  The evidence sustains findings of full perform-
ance of a broker's contract to give the services of two men in making
sales of lumber for the defendant, under the court's interpretation
of the contract, where the defendant's officer who executed the con-
tract in his testimony gave it the same interpretation, which was
for personal representation.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered June 23, 1923, upon
findings in favor of the plaintiffs, in an action on con-
tract, tried to the court.  Affirmed.

*John G. Barnes,* for appellant.

*Warren Hardy,* for respondent.

PER CURIAM.—The appellant, Kent Lumber and Tim-
ber Company, having its principal place of business at
Seattle, Washington, entered into a contract with
Curtis R. Hay, of Cedar Rapids, Iowa, wherein Hay
agreed "to give the services of two men, one being
Curtis R. Hay, in the representation" of the appellant
"for the sale of their Pacific Coast lumber in Iowa,"
and wherein the appellant agreed to pay him for the
services rendered the sum of $400 per month.  The
contract contained an exception to the effect that Hay
could sell yellow pine lumber, Inland Empire lumber,
and cedar shingles for other shippers.  Hay entered
upon the performance of the contract and continued
therein until the contract was mutually terminated.
He claimed that he earned under the contract the sum

[1]Reported in 229 Pac. 9.

of $1,070, of which the appellant paid $135.  He assigned his claim for the balance due thereon, $935, to the respondent C. C. Chambers, who brought the present action to recover in that amount.  The cause was tried by the court below sitting without a jury.  The court found that the contract was terminated on April 25, 1921; that Hay had fully performed the contract, and had earned thereunder $603.33, and, after crediting thereon the amount of the payment, allowed a recovery of $468.33.

The appellant takes the view that the trial court misconstrued the contract, and that its finding to the effect that the contract was fully performed by Hay is based on this misconstruction.  Its counsel contends that the agreement was that Hay and one other would devote their entire time in an endeavor to sell the appellant's products, while the evidence does not show that they did so.  But the court gave the contract that interpretation put upon it by the appellant's officer who executed the agreement on its behalf.  Speaking of the manner in which the business was conducted, in his direct testimony he used this language:

"Well, the way the lumber business is usually carried, on at any rate to a great extent, is through the employment of commission men.  Curtis R. Hay was such a commission man.  Prices are sent out by either the wholesalers or the mills each week, or sometimes oftener, and the commission salesmen send out their list, representing to the general retail trade that they represent a certain concern on the Coast and that these prices represent the prices from this concern on the Coast.  Business is obtained by these commission men through friendship with the dealers, or with their customers, and the wholesaler or mill here pays those commission men the usual fifty cents and a dollar, fifty cents on common and a dollar on grade.  That is the usual method of soliciting business."

In his cross-examination, he further stated:

"You take such a concern, we will say, as Curtis R. Hay, previous to the signing of this contract, that concern was soliciting business for probably one or two wholesale concerns, or maybe they had a good mill connection or something, like Bloedel-Donovan, or the Carlyle Company out here, a good big mill. The price lists are submitted to them once each week, and they travel over the country and get an order, and they may have two or three connections, and suppose some wholesaler on this particular order has a little better price, that wholesaler is going to get that order, the chances are. If one mill is holding up prices pretty well, they will send it to the cheapest man they have on their list. Pretty near every one of those commission concerns work with one or more concerns at all times. That is the reason we wanted this contract with Hay, we wanted personal representation, we wanted a man to work for us exclusively."

The evidence clearly shows that Hay performed the contract in the manner the witness pointed out. He not only sent the price lists furnished him by the appellant to the retail dealers generally, but visited numbers of them in person, and employed another who engaged in a like service. It is true that they were not very successful in making sales, but the failure does not appear to have been from lack of endeavor. Aside from the general business depression then prevailing, the prices at which he was permitted to sell the appellant's products did not enable him to compete with other dealers.

We find no reason for overturning the judgment of the trial court, and it will stand affirmed.